*794
 
 THOMPSON, Presiding Judge.
 

 Jerald Everett Atkins appeals from the judgments of the trial court ordering the condemnation and forfeiture of $7,128 in currency and of a 1998 Buick Regal automobile (“the Regal”).
 

 On June 13, 2007, the State filed separate civil-forfeiture complaints regarding the currency, case number CV-07-99, and the Regal, case number CV-07-100, pursuant to § 20-2-98, Ala.Code 1975. The trial court held a single bench trial on both complaints. The evidence adduced at the trial tended to show the following.
 

 On June 11, 2007, Chief Agent Stanley Webb of the Marion County Drug Task Force was involved in surveillance of Benefield Farm Road in Marion County. Law-enforcement officials had received complaints of drug traffic in the area. Agent Webb testified that while he was watching Benefield Farm Road he saw Atkins leave a home where Webb knew drug buys had taken place in the past. Webb followed Atkins from the home. After seeing Atkins drive off the edge of the road twice, Webb activated the blue lights on his patrol car and had Atkins pull over.
 

 After determining that Atkins had a valid driver’s license and proof of insurance, Agent Webb asked whether Atkins had any drugs, large sums of money, or weapons in the Regal. Atkins said that he did not and agreed to allow Webb to search the vehicle. Webb said that he first searched Atkins to ensure that he did not have any weapons. He discovered a set of scales in one of Atkins’s back pockets and a large sum of money in the other. Atkins told Webb that the money constituted the proceeds from the sale of land. Atkins also produced an unspecified number of Lortab tablets from his front pocket. Lor-tab is a controlled substance, and Atkins did not have a prescription for the pills.
 

 Agent Webb arrested Atkins for possession of a controlled substance; the currency and the Regal were seized at the time of Atkins’s arrest. Agent Webb testified that Atkins said that he was working with the Alabama Bureau of Investigation (“ABI”) and that Webb should call a certain ABI agent. Agent Webb read Atkins his rights pursuant to
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Atkins then continued to tell Agent Webb about a drug transaction on which he was working. Atkins told Agent Webb that he had just returned from Georgia, where he had attempted to buy one and one-half pounds of “ice,” or methamphetamine, but that he had not been successful.
 

 Atkins acknowledged that the ABI agent with whom he was purportedly working was not aware of the attempted buy. Agent Webb spoke with the ABI agent as Atkins had requested and learned that, although the ABI had made an effort to work with Atkins, Atkins had not reciprocated.
 

 The evidence also showed that Atkins and his wife had sold a parcel of property for $10,000 in the days just before Atkins’s arrest. They had received a check for the full amount on Friday, June 8, 2007. That same day, Atkins’s wife had deposited $250 and had taken the balance of the proceeds in cash. The evidence is undisputed that, when Agent Webb arrested Atkins, the money discovered in Atkins’s pocket was in an envelope like the type banks provide to their customers who cash checks. Atkins testified that on Monday, June 11, 2007, the day he was stopped, he had been carrying a large amount of the cash to pay off the balance owed on his car and to make a payment on his home mortgage to prevent foreclosure. He also said that the Regal was not the vehicle he used to travel
 
 *795
 
 to Georgia when he attempted to buy drugs.
 

 Atkins contends that the State failed to present sufficient evidence to show that either the currency or the Regal was linked to a drug transaction. The State asserts that Atkins failed to preserve this issue for appellate review because Atkins failed to raise it to the trial court either by objection or by a motion for a new trial. The State does not address the merits of Atkins’s appeal.
 

 Rule 52(b), Ala. R. Civ. P., provides, in pertinent part, as follows:
 

 “When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised
 
 whether or not
 
 the party raising the question has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment or a motion for a new trial.”
 

 (Emphasis added.) Because this matter was tried by the court without a jury, and because, as discussed below, the trial court included findings of fact in its written forfeiture judgments, this court may consider the question of the sufficiency of the evidence even though Atkins failed to specifically raise the issue in the trial court. See
 
 Allen Revival Ctr. of Faith, Inc. v. Wilson Ave. Baptist Church,
 
 959 So.2d 127 (Ala.Civ.App.2006), and the cases cited therein.
 

 On appellate review of a ruling from a forfeiture proceeding at which the evidence was presented
 
 ore terms,
 
 the trial court’s findings of fact are presumed to be correct and the judgment will be reversed only if it is contrary to the great weight of the evidence.
 
 Holloway v. State ex rel. Whetstone,
 
 772 So.2d 475, 477 (Ala.Civ.App.2000). In other words, a trial court’s judgment based on
 
 ore tenus
 
 evidence will not be reversed absent a showing that it amounts to an abuse of discretion.
 
 Hillegass v. State,
 
 795 So.2d 749, 753 (Ala.Civ.App.2001).
 

 In
 
 King v. State,
 
 938 So.2d 967 (Ala.Civ.App.2006), this court discussed the State’s burden when it seeks to have property condemned pursuant to the civil-forfeiture statute.
 

 “““Under § 20-2-93 the State must establish a prima facie case for the seizure, condemnation, and forfeiture of the property. The standard of proof is reasonable satisfaction. The statute is penal in nature and, as such, should be strictly construed.’ ” ’
 
 Ex parte McConathy,
 
 911 So.2d 677, 681 (Ala.2005) (quoting
 
 Holloway v. State ex rel. Whetstone,
 
 772 So.2d [475] at 476 [ (Ala.Civ.App.2000) ], quoting in turn
 
 State v. Smith,
 
 578 So.2d 1374, 1376 (Ala.Civ.App.1991)).”
 

 King,
 
 938 So.2d at 970.
 

 Atkins contends that the State failed to present sufficient evidence to connect the Regal to a specific drug transaction so as to warrant its condemnation and forfeiture.
 
 [1]
 

 
 *796
 
 “[T]o obtain the forfeiture of a vehicle pursuant to § 20-2-93(a)(5), Ala. Code 1975, the State must establish that the vehicle has been ‘used, or ... intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment’ of a controlled substance.”
 
 Kuykendall v. State,
 
 955 So.2d 442, 444 (Ala.Civ.App.2006). “To justify the forfeiture of a vehicle, the trier of fact must be reasonably satisfied that the vehicle was used to illegally transport or to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance.
 
 Ex parte Dorough,
 
 773 So.2d 1001, 1003
 
 (Ala.2000)." Id.
 
 at 444-45.
 

 The State presented evidence indicating that Agent Webb had pulled over Atkins’s vehicle after Atkins had been seen leaving the house of a known drug dealer. At the time he was stopped, Atkins was carrying Lortab pills for which he had no prescription. Agent Webb testified that the vehicle Atkins was driving at the time was the vehicle that was seized. Such evidence is sufficient to reasonably satisfy the finder of fact that the vehicle was used to transport a controlled substance, as well as to facilitate Atkins’s purchase of Lortab from a known dealer.
 

 Atkins also contends that, because the State failed to prove the make and model of the vehicle he was driving at the time of his arrest, the evidence was insufficient to warrant the forfeiture of the Regal. However, the record shows that Atkins testified that the vehicle he was in when Agent Webb pulled him over was the “1998 Buick Regal.” The evidence supports a conclusion that the vehicle seized when Atkins was arrested was adequately identified so as to warrant the forfeiture of that vehicle.
 

 The State alleged in its forfeiture complaint in case number CV-07-99 that the $7,128 in currency seized from Atkins after he was arrested on June 11, 2007, was “believed to be the proceeds from illegal drug transactions.” In the order condemning the currency, the trial court found that “the currency which is the object of this proceeding was used in an illegal drug transaction.”
 

 Section 20 — 2—93(a)(4), Ala.Code 1975, provides for forfeiture of
 

 “[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state; all proceeds traceable to such an exchange; and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of any law of this state concerning controlled substances.”
 

 Ex parte McConathy,
 
 911 So.2d 677 (Ala.2005), involved facts similar to this case. MeConathy was detained after he bought 23 Xanax pills from a police informant. At the time he was detained, MeConathy was carrying $8,000 in cash. The State filed a petition for civil forfeiture of the $8,000. As Atkins did in the instant case, MeConathy presented evidence at the forfeiture hearing indicating that the cash was derived from the sale of property. Nonetheless, the trial court ordered the money forfeited.
 

 The Alabama Supreme Court reversed the judgment of the trial court, concluding that the State had presented no evidence linking the $8,000 to McConathy’s purchase of the Xanax pills.
 
 McConathy,
 
 911 So.2d at 682. The supreme court noted that “[t]he mere presence of money in the proximity of controlled substances is insufficient to justify the forfeiture of the money.”
 
 Id.,
 
 citing
 
 Gatlin v. State,
 
 846 So.2d
 
 *797
 
 1090 (Ala.Civ.App.2002). The
 
 McConathy
 
 court continued:
 

 ‘“Our forfeiture cases have found the following circumstances to be indicative of contemplated or completed drug transactions: a large quantity of drugs,
 
 see, e.g., Shepherd v. State,
 
 664 So.2d 238 (Ala.Civ.App.1995) (21 pounds of marihuana); drugs packaged for sale,
 
 see, e.g., Pointer v. State,
 
 668 So.2d 41 (Ala.Civ.App.1995); drug paraphernalia or accouterments indicating sale, such as “baggies” or scales,
 
 see, e.g., Johnson v. State,
 
 667 So.2d 105, 108 (Ala.Civ.App.1995). None of those circumstances, nor an equivalent circumstance, is present in this case.
 

 “ ‘Our forfeiture cases have also remarked on the inherent incredibility of a defendant’s explanation for having in his or her possession a large quantity of cash.
 
 See, e.g., Harris v. State,
 
 821 So.2d 177 (Ala.2001) (finding inherently incredible a defendant’s story that the source of $120,000 in cash was a $90,000 payment the defendant received upon her husband’s death 17 years earlier, an amount that the defendant said had increased to $120,000 despite the fact that the defendant admitted that she kept the money at home in shoe boxes and lent some to friends, but charged no interest).
 
 See also Vaughn v. State,
 
 655 So.2d 1039, 1041 (Ala.Civ.App.1995) (noting that the defendant, who was found with a large amount of cash, was unemployed and had “no visible means of support”). ... ’ ”
 

 McConathy,
 
 911 So.2d at 686, quoting
 
 Gatlin,
 
 846 So.2d at 1093.
 

 Arguably, in this case there may have been sufficient evidence from which to determine that Atkins intended to use the money to make an illegal drug buy. His own testimony indicated that he intended to purchase methamphetamine in Georgia, and when he was arrested he was carrying scales, an accouterment used in the sale of drugs. However, there is no evidence to suggest that the money Atkins had in his pocket had been “used in an illegal drug transaction,” as the trial court found in its written order and as alleged by the State. Atkins presented evidence indicating that the confiscated money constituted the proceeds from what appears to be the legitimate sale of a parcel of property. That evidence was not disputed by the State. There was no evidence presented at the hearing to connect the $7,128 taken from Atkins to any specific drug transaction. In fact, at the close of the forfeiture hearing, the trial court acknowledged that, “from the testimony that I have heard it seems as though that the currency the defendant had on him at the time was from a land transaction where property was sold.” The trial court did go on to state its belief that the money “was to be used to purchase drugs as stated by Mr. Atkins to Mr. Webb.” That was not the factual finding stated in the subsequent written order of forfeiture, however.
 

 Although it is true that an appellate court may affirm a judgment of a trial court on a ground not relied upon by the trial court, this is so only if the alternative ground is a “valid legal ground.”
 
 Liberty Nat’l Life Ins. Co. v. University of Alabama Health Servs. Found., P.C.,
 
 881 So.2d 1013, 1020 (Ala.2003) (subject to due-process constraints, appellate courts “will affirm the trial court on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court”);
 
 Smith v. Equifax Servs., Inc.,
 
 537 So.2d 463, 465 (Ala.1988) (an appellate court “ ‘will affirm the judgment appealed from if supported on any valid legal ground,’ ” even if that ground is not raised below (quoting
 
 Tucker v. Nichols,
 
 431
 
 *798
 
 So.2d 1263, 1265 (Ala.1983)));
 
 Pavilion Dev., L.L.C. v. JBJ P’ship,
 
 979 So.2d 24, 41-43 (Ala.2007) (Murdock, J., concurring specially).
 

 In
 
 Curtis White Construction Co. v. Butts & Billingsley Construction Co.,
 
 473 So.2d 1040, 1041 (Ala.1985), our supreme court stated:
 

 “It is the function of a trial judge sitting as factfinder to decide facts where conflicts in the evidence exist. ... The appellate courts do not sit in judgment of the facts, and review the factfinder’s determination of facts only to the extent of determining whether it is sufficiently supported by the evidence, that question being one of law.”
 

 Here, we conclude that the State presented insufficient evidence to support the trial court’s written finding that the money forfeited was used in an illegal drug transaction. Accordingly, the trial court’s judgment entered in case number CV-07-99 ordering the condemnation and forfeiture of $7,128 in currency must be reversed and the cause remanded for the entry of a judgment consistent with this opinion.
 

 In a one-sentence “argument” in which he purports to cite to the “entire record,” Atkins contends that the State failed to offer evidence as to where the events serving as the basis for this matter occurred. The record does not support that contention, however. At the close of Agent Webb’s testimony, the prosecutor asked, “Of course all of this that occurred,
 
 occurred
 
 in Marion County?” Webb replied, “Yes, sir.” There is no merit to Atkins’s assertion that there was no evidence presented to establish venue.
 

 For the reasons stated above, the judgment in case number CV-07-100, ordering the condemnation and forfeiture of the Regal, is affirmed. The judgment in case number CV-07-99, ordering the condemnation and forfeiture of $7,128 in currency, is reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN and MOORE, JJ., concur.
 

 BRYAN and THOMAS, JJ., concur in the result, without writing.
 

 [1]
 

 . The complaint seeking condemnation and forfeiture of the Regal fails to name a defendant in the caption. The accompanying summons, however, did name as the defendants “One 1998 Buick Regal, VIN # 2G4WB52K9W1537166, Tag # 49A868V, and Jerald Everett Atkins as owner and driver.” However, a review of the record shows that Atkins did not object to the failure of the State to include a defendant in the caption of the complaint regarding the Regal, and he submitted to the jurisdiction of the court without objection. Because Atkins did not raise this issue and defended the complaint on the merits, there is no ground for reversal as to this issue.
 
 Glenn Armentor Law Corp. v. Counts,
 
 683 So.2d 964 (Ala.Civ.App.1994), overruled on other grounds by
 
 Ex parte Counts,
 
 683 So.2d 968 (Ala.1996).